IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| R.E. Goodson Construction Company, Inc. ) <br> and R.E. Goodson, L.L.C., ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> vs. ) <br>  ) <br> International Paper Company, International Paper ) <br> Realty Corp., and the United States of America ) <br>  ) <br> Defendants. ) <br> ) | Civil Action No. 4:02-4184-RBH <br><br><br><br><br> **O R D E R** |

Pending before the court are the following: (1) motion by Defendants International Paper Company ("IP") and International Paper Realty Corporation ("IPR") to amend this court's Order dated October 13, 2005 to allow certification pursuant to 28 U.S.C. § 1292(b) [Entry # 104]; (2) motion by Plaintiffs R.E. Goodson Construction Company, Inc. and R.E. Goodson L.L.C. (jointly, "Goodsons") to amend this court's Order dated October 13, 2005 [Entry # 105]; and (3) Defendant United States' motion for partial reconsideration of this court's Order dated October 13, 2005 [Entry # 107]. The court will address each in turn.

**I. Background Facts and Procedural History**

On October 13, 2005 this court issued an Order which outlined the background facts and procedural history of this case in great detail. As such, this court incorporates those portions herein. In order to address the current pending motions, the court notes that its Order dated October 13, 2005 denied [Entry # 39] the Goodsons' motion for summary judgment as to RCRA, granted in part and denied in part [Entry # 45] IP/IPR's motion for summary judgment as to all claims, granted [Entry #

1

48] the United States' motion for summary judgment as to RCRA, granted in part and denied in part [Entry # 58] the United States' motion for summary judgment as to CERCLA, denied [Entry # 64] the Goodsons and IP/IPR's motion to amend, and denied [Entry # 65] the Goodsons' motion for summary judgment as to CERCLA.

## II. Standard of Review

The parties in this case have termed their motions as either a motion to amend/correct the court's previous Order or a motion to partially reconsider the court's previous Order. As motions to reconsider are not expressly contemplated by the Federal Rules of Civil Procedure, the court will treat all of the present motions as Rule 54(b) motions to revise its Order.[1]

The Fourth Circuit has offered little guidance on the standard for evaluating such a motion, but has held motions under Rule 54(b) are "not subject to the restrictive standards" of motions under Rule 60. Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1472 (4th Cir. 1991) (the Court found it "unnecessary to thoroughly express our views on the interplay of Rules 60, 59, and Rule 54"). Having been admonished not to use the standards for a Rule 60 motion, the court turns to cases involving Rule 59 for guidance.

Motions under Rule 59 are not to be made lightly: "[R]econsideration of a previous Order is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 59.30[4] (3d ed.). The Fourth Circuit has held such a motion should be granted for only three reasons: (1) to follow an

---

[1] The Fourth Circuit has held a motion to reconsider an interlocutory Order is properly considered under Rule 54(b), though "it is not necessary to label under a particular rule number a motion for reconsideration of an interlocutory Order." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1470-72 (4th Cir. 1991). Rule 59(e) is an inappropriate vehicle because the Order in question is not a *final* judgment. Id. at 1469 (emphasis added).

intervening change in *controlling* law; (2) on account of new evidence; or (3) "to correct a *clear error of law* or prevent manifest injustice." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993) (emphasis added). Rule 59 motions "may not be used to make arguments that could have been made before the judgment was entered." Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002). Nor are they opportunities to rehash issues already ruled upon because a litigant is displeased with the result. See Tran v. Tran, 166 F. Supp. 2d 793, 798 (S.D.N.Y. 2001).

### III. Discussion

**A. IP/IPR's Motion to Amend the Court's Order to Allow § 1292(b) Certification**

Defendants International Paper and International Paper Realty have essentially filed a motion requesting that this court allow certification of a particular issue pursuant to 28 U.S.C. §1292(b).[2] In this regard, they request this court to amend its October 13, 2005 Order to include the statement that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion . . . ." The court will treat the motion as one under Rule 54(b) to revise its Order, since it requests the court to amend the Order to include the above statement.

Defendants assert that the question whether, after the Supreme Court's decision in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004), a PRP may bring a cost recovery action against another PRP under CERCLA § 107,[3] is a controlling question of law as to which there is "substantial difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation" under 28 U.S.C. §1292(b).

---

[2] Defendants cite Rule 5(a) of the Federal Rules of Appellate Procedure, however, such Rule would be inapplicable to this court.

[3] Presently codified at 42 U.S.C. § 9607.

This court does not believe that certification of this issue is appropriate in this case. "It is well settled that piece-meal appeals are not favored in the law, and that certification under section 1292(b) is an extraordinary measure." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 890 F. Supp. 470, 499 (D.S.C. 1995) (citing Switzerland Cheese Ass'n v. E. Horne's Market, Inc., 385 U.S. 23, 25 (1966). As in Friends of the Earth, the issues in the case at bar have been narrowed, discovery has essentially been completed, and the case is ripe for decision. To further delay the trial of the case at this time would not serve judicial economy. Accordingly, IP/IPR's motion to amend to add language allowing certification pursuant to 28 U.S.C. § 1292(b) is denied.

**B. Goodsons' Motion to Amend the Court's Order**

Plaintiffs first assert that this court's October 13, 2005 Order should be amended to expressly rule on the issue of allowing them to amend their Complaint to allege alternatively, in the event they are determined to be a responsible party ("PRP") under CERCLA § 107(a), a cause of action to recover response costs voluntarily incurred by them under § 107(a)(4)(B). As stated in this court's Order of October 13, 2005, the implied contribution theory by a PRP and the theory of cost recovery by a PRP under § 107(a) are not recognized in the Fourth Circuit. However, the plaintiffs contend that the United States Supreme Court's decision in Aviall "opens the door for new legal theories not previously recognized in this Circuit."

To the extent the court's Order was not sufficiently clear with regard to addressing the § 107(a) cost recovery action by a PRP, the motion to amend as to this point is also denied for the same reasons previously stated in the Order regarding an implied contribution claim under § 107(a), that being that the amendment would be futile. The court notes again that such a claim has not been recognized by the United States Supreme Court or by the Fourth Circuit. The Order is thus clarified on this point, and

4

the motion to amend on this ground is denied.

Plaintiffs also contend (and the government agrees) that the first full paragraph on page 33 of the Order dated October 13, 2005 should be amended under Rule 60(a) of the Federal Rules of Civil Procedure to correct clerical mistakes. The plaintiffs submit that the paragraph should be corrected to state:

> The U.S. argues that IP/IPR failed to exercise due care because it cleared the underbrush to access and use its timber. The U.S. argues that these actions could have disturbed unexploded ordnance ("OE") causing a release of hazardous substances. The U.S. additionally alleges that IP failed to exercise due care by continuing its everyday operations from 1948 to present "of clearing underbrush and using the timber on its property without regard to any potential OE." The U.S. states that IPR sold the site to the Goodsons without any warning as to potential OE, taking no precaution against the foreseeable acts and consequences of the Goodson's using the property. The U.S. argues that, at the very least, there are genuine issues of material fact with respect to IP/IPR's involvement in causing a release at the Site making Summary Judgment inappropriate.

The plaintiff's motion to amend is accordingly granted in part as to the insertion of the above paragraph in the first full paragraph of page 33 of the court's October 13, 2005 Order.

**C. United States' Motion for Partial Reconsideration of the Court's Order**

In the Order dated October 13, 2005, the court noted that the Goodsons have raised the innocent purchaser defense with regard to their claim for recovery of response costs pursuant to § 107 of CERCLA. As previously noted, although it was not raised in the parties' motions for summary judgment or at oral argument, it came to the court's attention that the innocent purchaser provisions of § 101(35)[4] were amended in 2002 by the Small Business Liability Relief and Brownfields Revitalization Act.[5] The court stated the amendments are of particular concern to this case because the amended

---

[4] Presently codified at 42 U.S.C. § 9601(35).

[5] The parcels of property which are the subject of this litigation were purchased by the Goodsons in 1999 and 2000.

version of the section defining "contractual relationship," altered the innocent purchaser defense.

After due consideration, the court found that the controlling definition of "contractual relationship" is the one that applied at the time the Goodsons purchased the parcels of property that are the subject of their CERCLA claim, rather than the definition set forth in the current version of the statute.

*1. The Retroactivity Issue*

In the current motion pending before the court, the United States requests that the court reconsider its decision to apply the definition of "contractual relationship" in place at the time of the purchase of the subject property. The United States argues that the court overlooked language in the current version of the statute, which it alleges unambiguously expresses Congress' intent that it apply retroactively to land purchases that were made prior to its enactment.

As stated by the court in the previous Order, there is a "traditional presumption" against retroactive legislation because of "the unfairness of imposing new burdens on persons after the fact." Landgraf v. USI Film Prods., 511 U.S. 244, 265, 270, 280 (1994). When a pending case involves a federal statute enacted after the underlying events in the lawsuit, as here, the court first must "determine whether Congress has expressly prescribed the statute's proper reach." Landgraf, 511 U.S. at 280. If the statute contains no such directive on its "temporal reach," Martin v. Hadix, 527 U.S. 343, 352 (1999), the court then must determine "whether the new statute would have retroactive effect." Landgraf, 511 U.S. at 280. The test of whether a statute operates retroactively is "whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 269-70. Where such a retroactive operation would result, the presumption against retroactivity instructs that the new statute "does not govern absent clear congressional intent favoring such a result." Id. at 280. See

also Tasios v. Reno, 204 F.3d 544, 549 (4th Cir. 2000) (absent such intent, "presumption against statutory retroactivity is not rebutted").

As mentioned above, the United States argues that the language of the current version of the statute unambiguously expresses Congress' intent that it apply retroactively. In support of this argument, the United States points out that Section 223 of the Brownfields Amendments amends the "reason to know" section of § 101(35)(B), and specifically Congress enacted "interim standards and practices" under § 101(35)(B)(iv) to be applicable to purchases before May 31, 1997 and after May 31, 1997, setting forth what constitutes "all appropriate inquiries" under § 101(35)(B)(i). The United States argues that the interim standards and practices under § 101(35)(B)(iv) are evidence of Congress' intent that the Brownfields Amendments are to apply retroactively.[6]

This court finds the United States' argument in this regard is unavailing. The court finds, contrary to the United States' contention otherwise, that the interim standards are not "unambiguous" expressions of Congressional intent that the Brownfields Amendments apply retroactively. The court finds that if Congress had intended to make the amendments to § 101(35) apply retroactively to purchases before the enactment of the Brownfields Amendments it could, and should have given the required clear expression of its intention, by plainly stating for example, that with regard to purchases made after May 31, 1997, the procedures of ASTM E1527-97 "apply to pre-enactment transactions"

---

[6] The interim standards and practices for property purchased on or after May 31, 1997 states:

> With respect to property purchased on or after March 31, 1997, and until the Administrator promulgates the regulations described in Clause (ii), the procedures of the American Society for Testing and Materials, including the document known as "Standard E1527-97", entitled Standard Practice for Environmental Site Assessment: Phase I Environment Site Assessment Process', *shall satisfy* the requirements in clause (i).

42 U.S.C. § 9601(35)(B)(iv)(II) (emphasis added).

or "shall operate retroactively." However, no *clear* Congressional intent is expressed for pre-enactment transactions, and thus, the clear intent requirement outlined by the Supreme Court in Landgraf prevents any *implication* of retroactivity.

The court will note that the United States also argues that the legislative history of the Brownfields Amendments reflects Congress' intent that its provisions apply retroactively. Specifically, the government notes that the Report of the Senate Committee on Environment and Public Works states that the changes to the "reason to know" definition "clarify the obligations of parties that seek to use this defense." S. Rep. No. 107-2, at 13, 107th Cong. 1st Sess. (2001). The committee emphasized the role of the EPA Administrator to promulgate regulations:

> In order to increase certainty and provide clarity, this section provides specific criteria that the Administrator shall include in regulations that establish standards and practices. . . . For property purchased after May 31, 1997, and before the regulations are promulgated, the procedures by the American Society for Testing and Materials, including the document known as 'Standard E1527-97,' entitled *Standard Practice for Environmental Site Assessments*: *Phase I Environmental Site Assessment Process* can satisfy the all appropriate inquiries requirement.

S. Rep. No. 107-2, at 14, 107th Cong. 1st Sess. (2001).

The United States argues that Congress could not have been clearer that it intended the amendments to § 101(35) to apply to property purchased after May 31, 1997 and until the EPA promulgated its regulations, including the property purchased in this case in 1999 and 2000.

This court finds this argument equally unavailing. The legislative history cited above only indicates that the procedures under a Phase I site assessment *"can"* satisfy the all appropriate inquiries requirement. Importantly, just as noted with regard to the statutory language, nothing in the referenced legislative history *clearly* reflects Congress' intent that the Brownfields Amendments are to be applied retroactively.

8

The court has carefully considered all of the United States' arguments and finds no basis for disturbing its earlier Order. This court continues to find that if the Brownfields Amendments were applied in this case, they would have retroactive effect by imposing several new obligations on the Goodsons.[7] Because of this retroactive impact and the absence of *clear* Congressional intent in favor of such a result, this court continues to find that the definition of "contractual relationship" which existed at the time the subject parcels of property were purchased is the appropriate standard to apply in this case. Interestingly, the United States argues that the statute and legislative history unambiguously express Congress' intent that it apply retroactively, however, it has cited no court which concurs in its position on this issue. On the other hand, this court's holding is in accord with our sister court's holding in 1325 "G" Street Associates, LP v. Rockwood Pigments NA, Inc., 2004 WL 2191709 (D. Md. 2004), and the District Court of Rhode Island's decision in U.S. v. Domenic Lombardi Realty, Inc., 290 F. Supp. 2d 198, 210 (D.R.I. 2003), which are apparently the only courts to have considered this issue.

*2. A Non-Exclusive Safe Harbor is Established*

As stated above, the United States takes the position in its motion that the Brownfields Amendments are applied retroactively. Specifically, that the Phase I environmental site assessment provided for in the interim standards and practices for property purchased after May 31, 1997, is applied retroactively, and as such, is the *exclusive* method to satisfy compliance with the "all appropriate inquiries" standard of the revised § 101(35)(B). More to the point, the government contends that because the Goodsons did not conduct a Phase I site assessment prior to purchasing the land that is the subject of this litigation, the United States is entitled to summary judgment as to the Goodsons' claims

---

[7] See pages 21-22 of the court's October 13, 2005 Order.

under § 107(a).

For the reasons stated above, the court finds this argument unconvincing. However, even assuming *arguendo*, that the Brownfields Amendments are applied retroactively, the court finds that the statutory language and the legislative history evidence intent that the interim standards and practices are not to be considered the exclusive method for satisfying the "all appropriate inquiries" requirement set forth in § 101(35)(B).

The Brownfields Amendments amended § 101(35), in part, as follows:

(B) Reason to Know.

> (iv) Interim Standards and Practices
>
>> (II) Property purchased on or after May 31, 1997 –
>>
>> With respect to property purchased on or after March 31, 1997, and until the Administrator promulgates the regulations described in Clause (ii), the procedures of the American Society for Testing and Materials, including the document known as "Standard E1527-97", entitled Standard Practice for Environmental Site Assessment: Phase I Environment Site Assessment Process', *shall satisfy* the requirements in clause (i).  (emphasis added).

Contrary to the position taken by the United States, the court finds that nothing in the actual language of the Brownfields Amendments to § 101(35) provides that a Phase I site assessment under E1527-97 is the *only* means of satisfying the "all appropriate inquiries" standard. Rather than a requirement, the court interprets the statutory language to reflect that a Phase I site assessment under E1527-97 is offered as a safe harbor to satisfy the "all appropriate inquiries" standard under all circumstances, until further regulations are established by the EPA Administrator.

The court finds the legislative history for the innocent landowners provisions of the Brownfields

Amendments also reflect the non-exclusive nature of the Phase I site assessment. As cited above, the Senate Report on the Brownfields Amendments provides that compliance with the Phase I site assessment "*can* satisfy" the "all appropriate inquiries" requirement for property purchased after May 31, 1997.

Importantly, Congress could have provided that a Phase I site assessment was required, or was the exclusive procedure to satisfy the "all appropriate inquiries" standard; however, Congress made no such mandate. Again, assuming *arguendo*, that the Brownfields Amendments are applied retroactively, the court finds the purpose of the interim standards and practices was to provide a sure route to a statutory safe harbor during transition, not to limit other routes to "innocent landowner" status.

*3. Goodsons' Westwood – Separate "Variant" – Argument*

In response in opposition to the United States' motion for partial reconsideration, the Goodsons have attempted to construe the court's previous Order in such a manner that the court finds a need to make a clarification.

As stated in the previous Order, the elements of a third party defense are: (1) that another party was the "sole cause" of the release of hazardous substances and any resulting damages; (2) that the other, responsible party did not cause the release in connection with a contractual, employment, or agency relationship with the defendant; and (3) that the defendant exercised due care and guarded against the foreseeable acts or omissions of the responsible party. Westfarm Assoc. Limited Partnership v. Washington Suburban Sanitary Commission, 66 F.3d 669, 682 (4th Cir. 1995).[8]

The Goodsons have taken a position in their memorandum in opposition to the United States'

---

[8] In the October 13, 2005 Order, the court noted that it is undisputed that the first element of the third party defense is satisfied. See page 25. However, the court found that questions of fact remain as to the second and third elements of third party defense. See pages 30 and 34, respectively.

11

motion for partial reconsideration that there are two "variants" of the third party defense: one based on the requirements of § 101(35) and another based on the requirements of § 107(b)(3). Under this interpretation of the statute, the Goodsons argue that they can satisfy the requirements of § 107(b)(3) even if they conceded a "contractual relationship" under § 101(35). To reach this result, the Goodsons cite the holding in Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp., 964 F.2d 85 (2d Cir. 1992), where the Second Circuit held that the "in connection with" language in the second element of the third party defense requires that the contractual relationship somehow relate to or afford a landowner control over the handling of hazardous substances. Id. at 91. In the case at bar, the Goodsons argue that any conceded contractual relationship it had with the United States (purchasing the subject parcels of property in 1999 and 2000 and therefore being placed in the chain of title) was in no way "in connection with" bombing activities more than fifty (50) years ago. The Goodsons argue that the court's previous Order supports this position, and cite the following sentence from page 28 of the Order: "Furthermore, given that the last release in the instant case happened more than fifty (50) years before the Goodsons' purchase of the property from IPR and that any contractual relationship was not 'in connection with' any hazardous substance, there was obviously nothing the Goodsons could have done to prevent the actions leading to a release." The Goodsons argue that the above cite is a conclusion by the court. As such, although not stated by the court in the Order, the Goodsons argue, by virtue of the court's alleged conclusion, that they have satisfied the second element of the third party defense.[9]

With regard to this position taken by the Goodsons, the court first finds that the above cited language from the court's previous Order is taken out of context. By way of illustration, the court notes

---

[9] As previously noted, the court explicitly held in the previous Order that *only* the first element of the third party defense was satisfied.

that the sentence preceding the language the Goodsons cite provides clarity to the entire paragraph.

> Goodson argues that except for their being in the chain of title, there is no evidence that they had any sort of contractual relationship whatsoever with the U.S. Furthermore, given that the last release in the instant case happened more than fifty (50) years before Goodsons' purchase of the property from IPR and that any contractual relationship was not "in connection with" any hazardous substance, there was obviously nothing the Goodsons could have done to prevent the actions leading to a release.

October 13, 2005 Order, pages 27-28.

The language cited by the Goodsons that they argue is a conclusion of the court, is actually an argument made by the Goodsons, which was simply being noted by the court.

Second, and more importantly, this court did not intend to imply that it would follow the Westwood Court's interpretation that the "in connection with" language of the second element of the § 107(b)(3) third party defense requires a contractual relationship to relate to the handling of hazardous substances or allow the landowner some element of control over the contaminating third party's activities. In the opinion of this court, to do so would ignore the statutory definition of "contractual relationship," which includes land contracts, deeds, and other instruments transferring title. Indeed, this court concurs with the District Court of Rhode Island's holding in U.S. v. Domenic Lombardi Realty, Inc., 204 F. Supp. 2d 318 (D.R.I. 2002), that to adopt such an interpretation "would render the explicit statutory language of ['contractual relationship'] inoperative." Id. at 332. This court finds that if it followed the Westwood Court's interpretation of the second element of the third party defense, a party could *knowingly* purchase contaminated property, and as long as the purchase did not relate to the contamination (the handling of hazardous substances) or allow the purchasing party to exert some element of control over the contaminating party's activities, the purchasing party would still be potentially entitled to the third party defense. This court finds that the above scenario is not in keeping

13

with the strict liability nature of the CERCLA statute.

Furthermore, the court notes again that the Fourth Circuit has found that the second element of the § 107(b)(3) third party defense is "that the other, responsible party [the United States] did not cause the release *in connection with* a *contractual . . . relationship* with the *defendant* [the Goodsons]." Westfarm, 66 F.3d at 682 (emphasis added). This court is bound by the Fourth Circuit's holdings, and the Fourth Circuit has made no finding that the *"in connection with"* language of § 107(b)(3) requires that the *"contractual relationship"* be somehow related to the *handling of hazardous substances*.

Again, to satisfy the second element of the § 107(b)(3) third party defense, a landowner must show that the responsible contaminating third party did not cause the release "in connection with" a "contractual relationship" with the landowner. See Id. In the court's opinion, § 101(35) simply comes into play to define the term "contractual relationship" under the third party defense set forth in § 107(b)(3). Pursuant to § 101(35)(A) the term "contractual relationship" is defined as including land contracts, deeds, and other instruments transferring title. As stated in the previous Order, it is undisputed in the case at bar the Goodsons had a contract to purchase with IPR followed by deeds. However, under § 101(35)(A)(i) a party can establish that it did not have a "contractual relationship" if it proves by a preponderance of the evidence that it did not know or have reason to know that any hazardous substance was disposed on property that it purchased. This section is referred to as the innocent purchaser provisions or innocent landowner "defense." The term "reason to know" is further defined in § 101(35)(B).

The court concluded in its previous Order that there remains a question of fact as to what the Goodsons knew or had reason to know with regard to ordnance on the property. Therefore, the court concluded that it could not, at the time, conclude the Goodsons satisfied the innocent purchaser

provisions, and thereby whether the second element of the third party defense was met.

In conclusion, this court finds that the requirements of § 101(35) are essential elements of the Goodsons' burden of proof with respect to their § 107(b)(3) third party defense. Accordingly, the court finds that the Goodsons' "in connection with" argument is without merit.

### IV. Conclusion

For the reasons stated above, Defendants International Paper Company and International Paper Realty Corporation motion to amend this court's Order dated October 13, 2005 to allow certification pursuant to 28 U.S.C. § 1292(b) [Entry # 104] is **DENIED**; Plaintiffs R.E. Goodson Construction Company, Inc. and R.E. Goodson L.L.C.'s motion to amend this court's Order dated October 13, 2005 [Entry # 105] is **GRANTED** in part and **DENIED** in part; and Defendant United States' motion for partial reconsideration of this court's Order dated October 13, 2005 [Entry # 107] is **DENIED.**

**IT IS SO ORDERED**.

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge

June 14, 2006
Florence, South Carolina